UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.

STEPHEN PILSON

Docket No. 2:20-mj-57-JHR

18 U.S.C. §§ 1201; 2261(a); 2262(a)

## AFFIDAVIT OF CHRISTOPHER D. PEAVEY

I, Christopher D. Peavey, having been duly sworn, state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I, Christopher D. Peavey, am a Special Agent with the Federal Bureau of Investigation ("FBI"), currently assigned to the Portland, Maine field office. I have been so employed for over 15 years. During my employment with the FBI, I have participated in numerous investigations relating to violent crimes and interstate transportation of victims, to include human trafficking, Mann Act violations, interstate threats, interstate domestic violence, and kidnapping.

2. The information contained in this Affidavit is based on my personal involvement in this investigation, my training and experience, and information provided to me by other law enforcement officers. Since this Affidavit is being submitted for a limited purpose, I have not included each and every fact that I or others have learned during the course of this investigation. Rather, I have set forth only those facts that demonstrate that probable cause exists to support the issuance of the requested criminal complaint.

### SHOWING OF PROBABLE CAUSE

3. I have reviewed Maine State Police records relating to the arrest of STEPHEN PILSON, the defendant, on December 15, 2019. I have also spoken with Maine State Trooper

1

Jesse B. Duda, who participated in the arrest of PILSON on that date. From my review of these materials, and from my conversation with Trooper Duda, I have learned the following:

    a.    Trooper Duda was patrolling the Maine Turnpike at approximately 3:40 pm on December 15, 2019, when he began receiving multiple reports of a black sedan (the "Sedan") traveling north on the Maine Turnpike and driving erratically. Ultimately, Trooper Duda received a report that the Sedan was pulled over in the northbound breakdown lane of the Maine Turnpike, and that a woman was being chased into the woods by a man, both of whom had emerged from the Sedan. Reports also indicated that the man appeared intoxicated. Upon receiving these reports, Trooper Duda responded to the location where the Sedan had pulled over.

    b.    When Trooper Duda arrived, he observed a woman standing in the breakdown lane several hundred feet from the Sedan. The woman (hereinafter, "Victim-1") was extremely upset, and after identifying herself to Trooper Duda, explained that she had been traveling with another individual, whom she referred to as her boyfriend, and whom she identified as STEPHEN PILSON, the defendant. In sum and substance, Victim-1 stated that the Sedan belonged to Victim-1, and that Victim-1 and PILSON had driven to Maine from Massachusetts. Victim-1 stated that PILSON was on probation arising out of a conviction for previously kidnapping Victim-1, and that ~~PILSO~~ [PILSON] was not supposed to have contact with Victim-1.

    c.    Victim-1 further informed Trooper Duda that during their drive, PILSON began drinking from a large bottle of vodka and became very intoxicated. Against her will, PILSON tied up Victim-1 using a yellow scarf that was in Victim-1's car, and informed Victim-1 that PILSON was taking Victim-1 to Canada where, PILSON informed Victim-1, they would

both die today. PILSON struck Victim-1 in the face during the course of the trip. PILSON drove erratically and almost collided with other cars. At some point, Victim-1 grabbed the key to the Sedan and tried to remove it from the ignition, causing the key to break. PILSON pulled over, at which point, Victim-1 exited the Sedan and fled from PILSON.

    d.  A witness who was present at the scene informed Trooper Duda that the witness had observed PILSON fleeing into the woods. At Trooper Duda's request, a second Trooper arrived on the scene with a K9. The Troopers used the K9 to locate PILSON in the woods where PILSON was apprehended and arrested.

    e.  Upon his arrest, PILSON was taken by Trooper Duda to the hospital to be evaluated for, among other things, a dog bite from the K9 that PILSON sustained when he refused to cooperate during his arrest.

    4.  I have reviewed recordings of three 911 calls that were received by the Maine State Police on the afternoon of December 15, 2019, from which I have learned the following:

    a.  At approximately 3:57 p.m., a witness ("Witness-1") called 911 to report that Witness-1 was driving southbound on the Maine Turnpike, and that Witness-1 saw a woman walking southbound away from a vehicle that was pulled over on the side of the road just north of exit 25 in the northbound lanes. Witness-1 also saw a man walking towards the woman, and Witness-1 stated that Witness-1 was concerned about the woman's safety.

    b.  At approximately 3:59 p.m., a second witness ("Witness-2") called 911 to report that Witness-2 saw a woman exit a vehicle that was pulled over in the breakdown lane on the northbound side of the Maine Turnpike. Witness-2 observed the woman waiving her arms and walking towards traffic (southbound) in order to try to get the attention of motorists. Witness-2 observed a man exit the same vehicle and follow the woman southbound.

   c. At approximately 3:58 p.m., Victim-1 called 911. On the recording of the call, Victim-1 was audibly upset. Victim-1 identified herself, and stated that she was walking southbound on the northbound side of I-95. Victim-1 was intermittently sobbing and screaming throughout the recording. Victim-1 made a number of statements relating to STEPHEN PILSON, the defendant. Victim-1 stated that "he's coming after me." Victim-1 further stated "he's on parole." Victim-1 further stated, "I'm afraid that he's going to come and get me." Victim-1 further stated, "He started tying me up ..." At the end of the recording of the telephone call, Trooper Duda could be heard arriving at the scene, at which time the 911 operator terminated the call.

  5. I have reviewed several photographs of Victim-1 taken by Trooper Duda on or about December 15, 2019, including a photograph depicting the inside of Victim-1's upper lip. That photograph revealed multiple cuts on the inside of Victim-1's lip. I understand from conferring with Trooper Duda, that Victim-1 indicated to Trooper Duda that the cuts depicted in the photograph were sustained as a result of STEPHEN PILSON, the defendant, striking Victim-1 in the face during the drive from Massachusetts to Maine on or about December 15, 2019.

  6. Approximately two weeks after the arrest of STEPHEN PILSON, the defendant, Victim-1 participated in a consensual recorded interview with me and other FBI Agents. Based on my participation in the interview, I learned, among other things, the following:

   a. Victim-1 first met PILSON through Victim-1's employment, and commenced an intimate romantic relationship with PILSON in or about the spring of 2018 through in or about the fall of 2019. At various points in time, PILSON and Victim-1 lived together, and shared some financial responsibilities, including each making payments on Victim-1's car, the Sedan.

4

      b.      On the day of PILSON's release from jail in December 2019, a judge in the Massachusetts State Court system issued a protective order against PILSON, which prohibited PILSON from contacting Victim-1. Nevertheless, PILSON did contact Victim-1, several times in December 2019 in order to arrange to see Victim-1, culminating in the trip to Maine on or about December 15, 2019 described in Paragraph 3 *supra*.

    7.      I have reviewed the criminal history of STEPHEN PILSON, the defendant, from which I learned that on or about October 18, 2019, PILSON was arrested for kidnapping in Middlesex County, Massachusetts. I have spoken to the Assistant District Attorney for Middlesex County who handled the prosecution of PILSON stemming from the October 2019 arrest, and I have reviewed records relating to that prosecution, including a recording of a judicial proceeding recorded on or about December 12, 2019, from which I have learned the following:

      a.      PILSON was convicted of kidnapping Victim-1, among other charges, upon a plea of guilty.

      b.      On or about December 12, 2019, PILSON was sentenced to time served and to a period of probation.

      c.      On that same day, PILSON was released. Among other conditions of PILSON's release, a protective order against PILSON was issued, and as a consequence, PILSON was prohibited from having contact with Victim-1, including on December 15, 2019.

## CONCLUSION

8. I respectfully submit, based on the facts set forth above, that probable cause exists to charge STEPHEN PILSON, the defendant, by criminal complaint with the offenses of kidnapping, in violation of Title 18, United States Code, Section 1201; interstate domestic violence, in violation of Title 18, United States Code, Section 2261(a)(1); and interstate violation of a protective order, in violation of Title 18, United States Code, Section 2262(a)(1); and request that the accompanying criminal complaint be issued.

Christopher D. Peavey
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence this 6th day of March, 2020.

John H. Rich III
United States Magistrate Judge